**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DEMETRIUS D. BRYANT                                               PLAINTIFF

v.                                    No. 4:11CV00914 JLH

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration[1]                                        DEFENDANT

**OPINION AND ORDER**

Demetrius D. Bryant has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Supplemental Security Income benefits. Both parties have submitted appeal briefs and the case is ready for decision.

The Court reviews the Commissioner's factual determinations to determine whether they are supported by substantial evidence in the record as a whole. *See Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *See Slusser*, 557 F.3d at 925; *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). Whether the Commissioner committed legal error is reviewed *de novo*. *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003).

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment is an impairment that results from

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is therefore substituted for Michael J. Astrue pursuant to Fed. R. Civ. P. 25(d).

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 1382c(a)(3)(D).

Bryant alleged that he was limited in his ability to work by mental retardation and depression. Tr. at 143. After conducting an administrative hearing at which Bryant's mother testified, *id*. at 28-37, an Administrative Law Judge concluded that Bryant had not been disabled within the meaning of the Social Security Act at any time from February 23, 2010, the date of the application, through June 7, 2011, the date of his decision. *Id*. at 21. On October 27, 2011, the Appeals Council received and considered additional evidence and then denied Bryant's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1-5. Bryant then filed his complaint initiating this appeal.

Bryant was 24 years old at the time of the application. *Id*. at 20. He completed the ninth or tenth grade in school. *Id*. at 28, 144.[2] He has no past relevant work. *Id*. at 20.

The ALJ considered Bryant's impairments by way of the required five-step sequential evaluation process. The first step is to determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, benefits are denied, regardless of the claimant's medical condition, age, education, or work experience. *Id*. § 416.920(b). The second step is to determine whether the claimant has an impairment or combination of impairments which is "severe" and meets the twelve-month duration requirement. *Id*. §§ 416.920(a)(4)(ii), 416.909. If not, benefits are denied. *Id*. §§ 416.920(a)(4)(ii), 416.909(c). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. *Id*. § 416.920(c). The third step is to determine whether the severe

---

[2] It makes little difference; either would qualify as a "limited" education. *See* 20 C.F.R. § 416.964(b)(3).

impairment meets or equals a listed impairment. *Id*. § 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id*. If the claimant does not meet or equal a listed impairment, then a residual functional capacity assessment is made. *Id*. § 416.920(a)(4). This residual functional capacity assessment is used at steps four and five. *Id*. The fourth step is to determine whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id*. § 416.920(a)(4)(iv). If so, benefits are denied. *Id*. The fifth step is to determine whether the claimant is able to make an adjustment to other work, given the claimant's residual functional capacity, age, education, and work experience. *Id*. § 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id*.

The ALJ found that Bryant had not engaged in substantial gainful activity since his alleged onset date. Tr. at 13. He found that Bryant had "the following severe impairments: cannabis abuse, alcohol abuse, borderline intellectual functioning, amphetamine abuse, malingering, and depressive disorder, [not otherwise specified]." *Id*. The ALJ found that Bryant did not have an impairment or combination of impairments that meets or equals a listed impairment. *Id*. at 16. He judged that Bryant's "allegations regarding the intensity, persistence, and limiting effects of [his] symptoms are not entirely credible." *Id*. at 19. The ALJ found that Bryant retained the residual functional capacity for a full range of work at all exertional levels but with some nonexertional limitations: he "is limited to performing simple work in a low stress environment where interpersonal contact is incidental to the work performed; the complexity of one to two step tasks is learned and performed by rote, with few variables and little judgment; and the supervision required is simple." *Id*. at 18. In reaching his residual functional capacity determination, the ALJ considered how Bryant would function if he ceased substance abuse, and he concluded that Bryant's substance abuse is a material factor in his

ability to work. *Id*. at 20. Based on vocational expert testimony from a previous hearing, *see id*. at 277-78 (hearing transcript from July 16, 2009), the ALJ found that there were other jobs that Bryant could perform, for example, hand packager, machine feeder, and kitchen helper. *Id*. at 21. Thus, the ALJ concluded that Bryant was not disabled. *Id*.

Bryant asserts several grounds for reversal or remand, one of which is that the ALJ erred at the third step of the analysis. Bryant argues that he meets or equals Listing § 12.05C, which requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. With respect to this listing, the ALJ wrote:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. When the claimant is not using alcohol and cannabis, the claimant does not have another physical or mental impairment that imposes an additional and significant work-related limitation of function. This conclusion is supported by the medical evidence of record as detailed above.

Tr. at 17. Earlier in his opinion, the ALJ discussed at length a mental health examination conducted in October of 2007 by Sam Boyd, Ph.D., on referral from Disability Determination for Social Security Administration in conjunction with an earlier application. *Id*. at 13-14, 189-95. Dr. Boyd administered the Third Edition of the Wechsler Adult Intelligence Scale (WAIS-III), on which Bryant scored a verbal IQ of 66, a performance IQ of 58, and a full scale IQ of 60. *Id*. at 191. Dr. Boyd concluded, however, that the scores were invalid because Bryant was malingering. *Id*. Bryant points out that on February 22, 2010, a licensed psychological examiner, Rachel Howell, administered the Second Edition of the Kaufman Brief Intelligence Test (KBIT-2) to him, which resulted in a verbal standard score of 73, a nonverbal standard score of 61, and an IQ composite of 62. *Id*. at 253, 256.

There is no mention of malingering in connection with those scores. The ALJ did not discuss the latter report in his opinion, so the Court cannot ascertain whether he considered it and concluded that it was unreliable or whether he simply overlooked it.[3]

The Commissioner argues in her brief that the KBIT-2 scores do not meet the requirements of acceptable evidence of intelligence testing under the relevant regulations, and she explains that IQ scores on tests other than WAIS must indicate a degree of intellectual functioning similar to WAIS scores and must be converted into the corresponding percentile rank in the general population. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). That is the type of explanation that the ALJ should have provided in his decision but did not. The Commissioner is asking this Court to affirm the ALJ's decision based upon reasoning not contained in the ALJ's opinion, but in reviewing a Social Security appeal, the Court "may not uphold an agency decision based on reasons not articulated by the agency . . . ." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) (quoting *HealthEast Bethesda Lutheran Hosp. & Rehab. Ctr. v. Shalala*, 164 F.3d 415, 418 (8th Cir. 1998)). This limitation on the review is based on the "well-settled principle of administrative law that a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision." *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990) (citing, *inter alia*, *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S. Ct. 454, 459, 87 L. Ed. 626 (1943)). Rather, a reviewing "court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change the decision." *Id*.

---

[3] Howell performed this examination for Arkansas Rehabilitation Services. Tr. at 253, 256. Bryant also was examined on the same day by a physician with Arkansas Rehabilitation Services. *Id*. at 251-52. The ALJ gave little weight to the physician's report and explained why. *Id*. at 20. He did not, however, mention the mental examination by Howell anywhere in his opinion.

"[T]he ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The Eighth Circuit has recognized, however, that an ALJ is not required to discuss every piece of evidence, and an ALJ's failure to cite specific evidence does not necessarily indicate that the evidence was not considered. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010); *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998). In both *Wildman* and *Black*, the ALJ had made specific reference to findings stated in a particular medical record but had not discussed one of the physician's opinions stated in that same record. Because the ALJ had specifically referenced the record, the Eighth Circuit found that it was unlikely that the ALJ had failed to consider and reject the undiscussed opinion. *Wildman*, 596 F.3d at 966; *Black*, 143 F.3d at 386. Here, there is no indication that the ALJ considered and rejected the February 2010 report by Howell. The central issue in Bryant's case is the extent of his mental limitations. The record contains only two IQ tests, one by Dr. Boyd in 2007, and one by Howell in 2010. As noted, the ALJ discussed Dr. Boyd's report at length but never mentioned Howell's report. Because the extent of Bryant's mental limitations is the central issue in the case, and because there were only two reports of IQ tests in the file, it seems unlikely that the ALJ would have failed to mention one of them in his opinion, if he had considered it. *See McClinton v. Comm'r of Social Security*, No. 1:11-CV-615, 2012 WL 4356808, at *8-9 (W.D. Mich., Sept. 24, 2012) (holding, on facts similar to this case, that it would be improper to affirm based on a *de novo* analysis of IQ scores that was not in the ALJ opinion).

As an additional part of his argument that he meets or equals Listing § 12.05(C), Bryant argues that the ALJ failed to perform the proper analysis because a finding of disability is a condition

precedent to application of the drug and alcohol rules. For support, Bryant cites 20 C.F.R. § 416.935 and *Brueggemann*, 348 F.3d at 693-94.

The regulation provides:

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935.[4] In *Brueggemann*, after noting that the ALJ failed to cite the regulation specific to drug addiction and alcoholism and that the failure to do so was not merely a drafting oversight, the court explained:

The plain text of the relevant regulation requires the ALJ first to determine whether Brueggemann is disabled. 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled*

---

[4] Just as with the statutory provisions, there are parallel regulations for SSI and Disability Insurance benefits. The Disability Insurance benefits regulations dealing with this subject matter are found at 20 C.F.R. § 404.1535.

> and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). The ALJ must reach this determination initially, as the ALJ did in *Fastner v. Barnhart*, 324 F.3d 981, 986 (8th Cir. 2003), using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001). The ALJ must base this disability determination on substantial evidence of Brueggemann's medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. . . .
>
> If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2). . . .
>
> Only after the ALJ has made an initial determination 1) that Brueggemann is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether Brueggemann's substance use disorders are a contributing factor material to the determination of disability.

348 F.3d at 694-95 (emphasis in original) (footnotes omitted).

Here, as in *Brueggemann*, the ALJ never cited the regulation specifically applicable to drug addiction or alcoholism, 20 C.F.R. § 416.935, nor is it clear that the absence of a citation to that regulation is merely a drafting oversight. In one portion of his opinion, the ALJ seems to follow the required procedure of first determining whether Bryant is disabled without segregating out the effects of his substance abuse disorders and then considering whether his substance abuse disorders are a contributing factor material to the determination of disability. Tr. at 15. Yet, in his findings specific to Listing § 12.05C, *see supra* p. 4, the ALJ seems to segregate out the effects of Bryant's substance abuse disorders and then conclude, with those effects deducted, that Bryant lacked the requisite physical or mental impairment. *Id*. at 17.

8

In summary, it is unclear whether the ALJ considered Bryant's February 2010 IQ scores, and it is also unclear whether he followed the procedure mandated by 20 C.F.R. § 416.935. Therefore, the proper course is to remand for reconsideration. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) ("The problem with the ALJ's opinion is that it is unclear . . . ."); *Christner v. Astrue*, 498 F.3d 790, 794 (8th Cir. 2007) ("[B]ecause it is unclear to us whether the ALJ expressly rejected Christner's IQ score . . . we remand to the ALJ for reconsideration.").

Bryant also argues that the ALJ erred at the fourth and fifth steps. One of his arguments is that the ALJ violated his due process rights by relying on the vocational expert's testimony from the previous hearing without giving him an opportunity to respond. He also contends that the hypothetical question posed to the vocational expert at the earlier hearing was inadequate because it failed to consider limitations that were documented between the earlier hearing and the present one. The Court will not comment on the merits of these arguments inasmuch as they may be mooted by the remand.

The Commissioner's decision is reversed, and this case is remanded for action consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

IT IS SO ORDERED this 11th day of July, 2013.

*[signature: J. Leon Holmes]*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE